**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: ______________________________

POPEYES LOUISIANA KITCHEN, INC.,

Plaintiff,

vs.

JAM EQUITIES OF CORALVILLE, LLC;
JAM EQUITIES OF E AVE, LLC;
JAM EQUITIES OF WATERLOO, LLC;
JAM EQUITIES OF DUBUQUE, LLC;
JAM EQUITIES OF MERLE HAY, LLC;
JAM EQUITIES OF BLAIRS FERRY, LLC;
JAM EQUITIES OF SE 14TH, LLC;
JAM EQUITIES OF ALTOONA, LLC;
JAM EQUITIES OF ANKENY, LLC;
and ASIF POONJA,

Defendants.
________________________________________/

# COMPLAINT

Plaintiff Popeyes Louisiana Kitchen, Inc. ("Popeyes") sues Defendants Jam Equities of Coralville, LLC ("Coralville"), Jam Equities of E. Ave, LLC ("E Ave"), Jam Equities of Waterloo, LLC ("Waterloo"), Jam Equities of Dubuque, LLC ("Dubuque"), Jam Equities of Merle Hay, LLC ("Merle Hay"), Jam Equities of Blairs Ferry, LLC ("Blairs"), Jam Equities of SE 14th, LLC ("Jam 14"), Jam Equities of Altoona, LLC ("Altoona") (Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs, Jam 14 and Altoona shall be referred to collectively as the "Franchisee Defendants"), Jam Equities of Ankeny, LLC ("Ankeny") and Asif Poonja ("Poonja") (the Franchisee Defendants, Ankeny and Poonja shall be referred to collectively as "Defendants") and states:

## THE PARTIES

1. Plaintiff Popeyes is a Minnesota corporation with its principal place of business in Miami, Florida.

2. Defendant Poonja is a citizen and resident of, and domiciled in, the State of Illinois.

3. Defendant Coralville is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Coralville.

4. Defendant E Ave is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of E Ave.

5. Defendant Waterloo is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Waterloo.

6. Defendant Dubuque is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Dubuque.

7. Defendant Merle Hay is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Merle Hay.

8. Defendant Blairs is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Blairs.

9. Defendant Jam 14 is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Jam 14.

10. Defendant Altoona is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Altoona.

11. Defendant Ankeny is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Ankeny.

## JURISDICTION AND VENUE

12. Popeyes operates and franchises restaurants throughout the world, including the United States. Founded nearly 30 years ago, Popeyes now has more than 2,700 franchised restaurants in the world.

13. Popeyes' franchise operations are conducted and supervised from its world headquarters located in Miami, Florida. Popeyes, Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs, Jam 14, Ankeny and Altoona have carried on a continuous course of direct communications by mail, e-mail and by telephone through Popeyes' headquarters in Miami, Florida.

14. The course of dealing between Popeyes and its franchisees, including Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs, Jam 14, Ankeny and Altoona shows that decision-making authority is vested in Popeyes' headquarters in Miami, Florida.

15. Each of the Defendants voluntarily entered into a contractual relationship with Popeyes which envisioned contacts with Popeyes at Popeyes's headquarters in Miami, Florida.

16. Each one of the Defendants has purposefully availed themselves of the benefits and protection of Florida law by entering into an agreement with Popeyes which expressly provides that Florida law will govern any disputes among the parties.

17. Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs, Jam 14 and Altoona have breached a contract which was to be performed in Florida due to their failure to pay amounts owed to Popeyes. These breaches have caused damage to Popeyes at its headquarters in Miami, Florida.

18. This Court has jurisdiction over this action based upon 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

19. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in their written agreement. In the parties' agreement, Defendants agreed that the United States District Court for the Southern District of Florida shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with the agreement. Additionally, Defendants agreed not to contest or challenge the jurisdiction or venue of this Court. The parties' agreement is governed by Florida law, involves consideration of not less than $250,000 and bears a substantial relationship to Florida, where Popeyes is a resident and is headquartered.

**<u>POPEYES' FRANCHISE AGREEMENTS WITH THE FRANCHISEE DEFENDANTS</u>**

20. Collectively, the Franchisee Defendants owned and operated eight restaurants as franchised POPEYES® restaurants (the "Restaurants") pursuant to franchise agreements (the "Franchise Agreements").

21. Coralville owned one restaurant located at 750 Coral Ridge Ave., Coralville, Iowa 52241 (the "Coralville Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Coralville Franchise Agreement"). A copy of the Coralville Franchise Agreement is attached as Exhibit "A."

22. E Ave owned one restaurant located at 3401 E. Avenue NW, Cedar Rapids, Iowa 52402 (the "E Ave. Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "E Ave Franchise Agreement"). A copy of the E Ave Franchise Agreement is attached as Exhibit "B."

23. Waterloo owned one restaurant located at 4015 Lowes Blvd., Waterloo, Iowa 50701 (the "Waterloo Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Waterloo Franchise Agreement").

A copy of the Waterloo Franchise Agreement is attached as Exhibit "C."

24. Dubuque owned one restaurant located at 4825 Asbury Road, Dubuque, Iowa 52002 (the "Dubuque Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Dubuque Franchise Agreement"). A copy of the Dubuque Franchise Agreement is attached as Exhibit "D."

25. Merle Hay owned one restaurant located at 4140 Merle Hay Road, Des Moines, Iowa 50310 (the "Merle Hay Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated September 21, 2005 (the "Merle Hay Franchise Agreement"). A copy of the Merle Hay Franchise Agreement is attached as Exhibit "E."

26. Defendant Blairs owned and operated one restaurant located at 370 Blairs Ferry Road, NE, Cedar Rapids, Iowa 52402 (the "Cedar Rapids Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Cedar Rapids Franchise Agreement"). A copy of the Cedar Rapids Franchise Agreement is attached as Exhibit "F."

27. Defendant Jam 14 owned and operated one restaurant located at 6230 SE 14th Street, Des Moines, Iowa (the "Des Moines Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated December 13, 2006 (the "Des Moines Franchise Agreement"). A copy of the Des Moines Franchise Agreement is attached as Exhibit "G."

28. Defendant Altoona owned and operated one restaurant located at 3831 8th Street SW, Altoona, Iowa 50009 (the "Altoona Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated August 1, 2012 (the "Altoona Franchise Agreement") (the Coralville Franchise Agreement, the E Ave Franchise

Agreement, the Waterloo Franchise Agreement, the Dubuque Franchise Agreement, the Merle Hay Franchise Agreement, the Cedar Rapids Franchise Agreement, the Des Moines Franchise Agreement and the Altoona Franchise Agreement shall be referred to collectively as the "Franchise Agreements"). A true and correct copy of the Altoona Franchise Agreement is attached as Exhibit "H."

29. Under the terms of the Franchise Agreements, the Franchisee Defendants were required to operate and maintain the Restaurants throughout the entirety of the Franchise Agreements' terms in conformity and compliance with Popeyes' standards and specifications. Further, the Franchisee Defendants were required to timely pay to Popeyes amounts owed for royalties, marketing expenses and other miscellaneous amounts.

30. The Franchise Agreements contain provisions regarding defaults and establishing the parties' rights and obligations in the event of a default by the Franchisee Defendants thereunder.

31. Pursuant to written guaranties (collectively the "Guaranties") executed in connection with the Franchisee Defendants' execution of the Franchise Agreements, Poonja unconditionally and irrevocably guaranteed the payment and performance of any and all obligations of the Franchisee Defendants under the Franchise Agreements.

## DEFENDANTS' DEFAULTS AND TERMINATIONS

32. The Franchisee Defendants and Poonja breached the Franchise Agreements and Guaranties by failing to operate and/or maintain the Restaurants in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards.

33. Popeyes notified each of the Franchisee Defendants by letter (collectively the "Notices of Default") regarding their defaults and demanded that they cure the defaults within the time periods set forth therein.

34. The Franchisee Defendants did not cure the defaults identified in the Notices of Default. As a result, Popeyes sent the Franchisee Defendants letters informing them that the Franchise Agreements were terminated and demanding that the Franchisee Defendants comply with the Franchise Agreements' post-termination obligations.

35. In violation of the Franchise Agreements and the Guaranties, the Franchisee Defendants and Poonja refused to stop operating the Restaurants using Popeyes' trademarks or to otherwise comply with the Franchise Agreements' post-termination obligations.

36. Had the Franchisee Defendants not breached the Franchise Agreements and caused them to be terminated, Popeyes would have received for the remainder of the Franchise Agreements' terms, the amounts the Franchisee Defendants were obligated to pay under the Franchise Agreements, including among other things royalties and advertising contributions.

37. On September 5, 2025, Popeyes filed a complaint against Defendants Coralville, E Ave, Waterloo, Dubuque, Merle Hay and Poonja captioned *Popeyes Louisiana Kitchen, Inc. v. Jam Equities of Coralville, LLC, et al.*, Case No. 25-cv-24066 (United States District Court for the Southern District of Florida) (the "Litigation"). On November 4, 2025, Popeyes amended its complaint in the Litigation to add Defendants Blairs and Jam 14.

38. To settle the Litigation, on November 25, 2025, Popeyes and each of certain Defendants entered a Limited License Agreement (the "Limited License"), pursuant to which they agreed that the Franchise Agreements were deemed terminated as a result of the Franchisee Defendants' breaches but gave the Franchisee Defendants and Poonja a further opportunity to operate the Restaurants through June 30, 2026 (the "Sale Date") to attempt to sell them to, among other things, mitigate the amounts the Franchisee Defendants and Poonja owed to Popeyes. A true and correct copy of the Limited License is attached as Exhibit "I."

39. Pursuant to the Limited License, the Franchisee Defendants and Poonja were given a license to operate the Restaurants on the same terms and conditions (other than term and right of successor or renewal) as originally set forth in the terminated Franchise Agreements previously in effect with respect to each of the Restaurants. Other than the terms dealing with the length of the term and the right of successor or renewal, all of the terms of the Franchise Agreements were incorporated into the Limited License.

40. The Limited License required the Franchisee Defendants and Poonja to sell the Restaurants by the Sale Date.

41. Further, pursuant to the Limited License, the Franchisee Defendants and Poonja were obligated to make payment of all financial obligations under the Franchise Agreements and Guaranties on a weekly basis.

42. Additionally, the Franchisee Defendants and Poonja agreed in the Limited License that, on or before the earlier of the June 30, 2026, Sale Date, or the sale of the Restaurants pursuant to the Limited License, the Franchisee Defendants and Poonja would pay to Popeyes all amounts owed to Popeyes as of that date, including the attorneys' fees and costs incurred in connection with the Litigation.

43. After the Franchisee Defendants and Poonja entered the Limited License, they repeatedly breached the Limited License by failing to timely pay Popeyes ongoing amounts owed for royalties and advertising contributions and by failing to operate and/or maintain the Restaurants in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards.

44. The Franchisee Defendants and Poonja did not sell any of the Restaurants and did not pay Popeyes all amounts owed to it, including all of the royalties due and owing after the Limited License was entered, or any of the other amounts owed, by the June 30, 2026, deadline.

45. On May 14, 2026, Popeyes sent the Franchisee Defendants and Poonja a Notice Operational Default (the "May Notices of Default") setting forth various critical food safety issues at multiple Restaurants and demanding that the Franchisee Defendants and Poonja cure such defaults within five days. The Franchisee Defendants and Poonja did not cure all of the defaults.

46. On May 22, 2026, Popeyes sent the Franchisee Defendants and Poonja a letter informing them that the Limited License had been terminated.

47. The Franchisee Defendants and Poonja, jointly and severally, owe Popeyes at least $3.4 million.

48. All conditions precedent to the institution of this action have been satisfied, discharged, excused and/or waived.

49. Each of the Defendants agreed in writing that in litigation to enforce the terms of the Franchise Agreements and Limited License, Popeyes, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

50. Popeyes has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Popeyes and Defendants.

**COUNT I**
**BREACH OF LIMITED LICENSE**
**(Against Coralville)**

51. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

52. Coralville breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

53. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT II**
**BREACH OF LIMITED LICENSE**
**(Against E Ave)**

54. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

55. E Ave breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

56. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT III**
**BREACH OF LIMITED LICENSE**
**(Against Waterloo)**

57. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

58. Waterloo breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

59. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT IV**
**BREACH OF LIMITED LICENSE**
**(Against Dubuque)**

60. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

61. Dubuque breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

62. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT V**
**BREACH OF LIMITED LICENSE**
**(Against Merle Hay)**

63. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

64. Merle Hay breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

65. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VI**
**BREACH OF LIMITED LICENSE**
**(Against Blairs)**

66. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

67. Blairs breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

68. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VII**
**BREACH OF LIMITED LICENSE**
**(Against Jam 14)**

69. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

70. Jam 14 breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

71. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VIII**
**BREACH OF LIMITED LICENSE**
**(Against Altoona)**

72. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

73. Altoona breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

74. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT IX**
**BREACH OF LIMITED LICENSE**
**(Against Poonja)**

75. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

76. Poonja breached the Limited License by failing to operate in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards, failing to sell the Restaurants and by failing to pay Popeyes the amounts owed under the Limited License.

77. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT X**
**DECLARATORY RELIEF**
**(Against Ankeny)**

78. Popeyes re-alleges and incorporates Paragraphs 1 through 50 above as if fully set forth herein.

79. This is a claim for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

80. Ankeny owns one restaurant located at 3055 N. Ankeny Blvd., Ankeny, Iowa 50021 (the "Ankeny Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated March 6, 2024 (the "Ankeny Franchise Agreement"). A copy of the Ankeny Franchise Agreement is attached as Exhibit "I."

81. Multiple sections of the Ankeny Franchise Agreement, which is governed by Florida law, require Ankeny to purchase equipment and supplies solely approved by Popeyes.

82. Section 10.06 of the Ankeny Franchise Agreement states:

> Franchisee shall purchase all ingredients, products, materials, supplies, and other items required in the operation of the Franchised Restaurant which are or incorporate trade-secrets of Franchisor, as designated by Franchisor (**"Trade-Secret Products"**) only from Franchisor or suppliers designated by Franchisor, and these Trade-Secret Products shall only be purchased for, used or sold, directly or indirectly, at the Franchised Restaurant.

83. Section 10.07 of the Ankeny Franchise Agreement states:

> Franchisee shall purchase all ingredients, products, materials, supplies, including

> cleaning supplies, paper goods, and other items required for the operation of the Franchised Restaurant (including items required for limited time offers), except Trade-Secret Products, solely from suppliers who demonstrate, to the continuing reasonable satisfaction of Franchisor, the ability to meet Franchisor's reasonable standards and specifications for such items; who possess adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; whose approval would not adversely impact the overall efficiencies of the Popeyes System; and who have been approved in writing by Franchisor and such approval has not thereafter been revoked. If Franchisee desires to purchase any such items from an unapproved supplier, Franchisee shall submit to Franchisor a written request for approval, or shall request the supplier itself to seek approval. Franchisor shall have the right to require, as a condition of its approval, that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, at Franchisor's option, either to Franchisor or to an independent laboratory designated by Franchisor for testing prior to granting approval. A charge not to exceed the cost and expenses actually incurred by Franchisor to conduct any inspection, including the actual cost of testing, shall be paid by the supplier or Franchisee. In addition, if the proposed supplier lacks its own current and approved form of third-party audit, Franchisor's reasonable cost of third-party audit fees shall also be paid by the supplier or Franchisee. Franchisor reserves the right, at its option, to reinspect the facilities and products of any such approved supplier from time to time and to revoke its approval upon failure of such supplier to continue to meet any of the foregoing criteria. Nothing in the foregoing shall be construed to require Franchisor to approve any particular supplier, nor to require Franchisor to make available to prospective suppliers, standards and specifications for formulas that Franchisor, in its sole discretion, deems confidential.

84. Specifically with respect to point-of-sale systems ("POS Systems"), section 10.14 of the Ankeny Franchise Agreement states:

> A. Franchisee shall purchase, install and use a point-of-sale system ("**POS System**") and a back-of-house system ("**BOH System**"), in each case, that has been approved in writing by Franchisor and that meets Franchisor's specifications. Franchisee agrees that Franchisor (or Franchisor's designated vendor) shall have the right to retrieve any data and information from Franchisee's POS System and its BOH System as Franchisor, in its sole discretion, deems appropriate, including electronically polling sales, menu mix, transaction-level data, inventory, labor and other data of the Franchised Restaurant; provided, however, Franchisor shall take necessary precautions to preserve and protect Franchisee's security and privacy rights in exercising its right hereunder. Franchisee shall subscribe to Franchisor's approved polling solution. Franchisee shall use and adhere to a standardized set of menu sales item price look-up codes (PLUs) and descriptors for every menu sales item in Franchisee's POS System and BOH System, including limited time offers. Franchisor may revise its specifications for the POS System and the BOH System periodically. Consequently, Franchisee must upgrade, update or add new features

or components to Franchisee's POS System and its BOH System at such time(s) as such specifications are revised. In addition to the foregoing, Franchisor may poll data and information from other systems installed at the Franchised Restaurant, including speed of service data from drive-thru timer systems. Further, Franchisee shall, at its sole cost and expense, integrate or otherwise permit the integration of the POS System and/or BOH System with such technological platforms designated by Franchisor from time to time (including websites and mobile applications designated by Franchisor).

B. Franchisee must also, at its sole cost and expense: (a) maintain, use and/or operate a centralized or technology based methods of taking, processing, routing, and delivering orders or receiving payment for such orders that may be mandated by Franchisor at any time during the Term in addition to the methods and technology Franchisor currently uses or authorizes (individually an "**Additional Ordering System**" and collectively "**Additional Ordering Systems**"); and (b) add or replace equipment, wiring, hardware and software in connection with the Additional Ordering Systems. To the extent any products and services related to an Additional Ordering System are owned by Franchisor or provided to Franchisee by Franchisor, Franchisor may charge up front and/or ongoing fees. Franchisor shall be the sole owner of all direct and related rights and assets, including software and hardware, intellectual property and all data generated by the Additional Ordering Systems, but excluding hardware or equipment Franchisee purchases directly for the purpose of gaining access to the Additional Order System. If Franchisor requires Franchisee to use an Additional Ordering System, then Franchisee shall comply with Franchisor's requirements for connecting to and utilizing such technology in connection with Franchisee's operation of the Franchised Restaurant. Franchisee will install and implement any Additional Ordering System required by Franchisor within the reasonable time specified by Franchisor.

C. Franchisee must also, at its sole cost and expense: (a) maintain, use and/or operate technology for the purpose of communicating with customers of POPEYES Restaurants and the collection, processing, storage and use of POPEYES Restaurant customer data that may be mandated by Franchisor at any time during the Term in addition to the methods and technology Franchisor currently uses or authorizes (individually an "**Additional Digital System**" and collectively, the "**Additional Digital Systems**"); and (b) add or replace equipment, wiring, hardware and software in connection with the Additional Digital Systems. To the extent any products and services related to an Additional Digital System are owned by Franchisor or provided to Franchisee by Franchisor, Franchisor may charge up front and/or ongoing fees. Franchisor shall be the sole owner of all direct and related rights and assets, including software and hardware, intellectual property and all data generated by the Additional Digital Systems, but excluding hardware or equipment Franchisee purchases directly for the purpose of gaining access to an Additional Digital System. Franchisor may provide the data to third parties and use the data generated by the Additional Digital Systems (1) to analyze customer trends, (2) to market Franchisor developed goods and products to all customers or specific

> customer(s), (3) to reward loyal or repeat customers, (4) to provide the data to third parties, and (5) for such other purposes as Franchisor deems appropriate in its sole discretion. Franchisee acknowledges and agrees that any amounts received by Franchisor from providing the data generated by the Additional Digital Systems to third parties shall be the sole property of Franchisor. If Franchisor requires Franchisee to use an Additional Digital System, then Franchisee shall comply with Franchisor's requirements for connecting to and utilizing such technology in connection with Franchisee's operation of the Franchised Restaurant. Franchisee will install and implement any Additional Digital System required by Franchisor within the reasonable time specified by Franchisor.
>
> D. Franchisee shall purchase, install and maintain a computer system, separate from the POS System and the BOH System, at the Franchised Restaurant that meets Franchisor's current standards and specifications for training, communications and access to Internet-based resources provided by Franchisor (**"Computer System"**). Franchisor may periodically revise its specifications for the Computer System requiring Franchisee to promptly upgrade or update as necessary to meet Franchisor's then current standards and specifications.

85. Ankeny has recently advised Popeyes that, according to Ankeny, notwithstanding the provisions of the Ankeny Franchise Agreement which state that Ankeny is required to purchase equipment and software approved by Popeyes, Ankeny is not required to purchase equipment and software approved by Popeyes because the above-referenced provisions of the Ankeny Franchise Agreement are unenforceable.

86. Ankeny has threatened to sue Popeyes for enforcing its rights regarding Ankeny's use of approved equipment and software.

87. The alleged facts demonstrate that there is a substantial and actual controversy between the parties, with adverse legal interests, of such immediacy and existence as to warrant a declaratory judgment.

88. Popeyes and Ankeny have adverse legal interests concerning the enforceability of the above-referenced provisions in the Ankeny Franchise Agreement, whereby Popeyes contends that they are enforceable while Ankeny contends they are not.

89. The controversy is definite and concrete.

90. The controversy is real and substantial, not hypothetical.

91. Popeyes seeks a declaration that the above-referenced provisions in the Ankeny Franchise Agreement are enforceable under Florida law.

**DEMAND FOR ATTORNEYS' FEES AND COSTS**

The agreement at issue in this litigation provides that Defendants shall pay Popeyes all damages, costs and expenses, including reasonable attorneys' fees, incurred by Popeyes in connection with its efforts to enforce the Limited License. Popeyes hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Plaintiff Popeyes Louisiana Kitchen, Inc. demands judgment against Defendants Jam Equities of Coralville, LLC, Jam Equities of E. Ave, LLC, Jam Equities of Waterloo, LLC, Jam Equities of Dubuque, LLC, Jam Equities of Merle Hay, LLC, Jam Equities of Blairs Ferry, LLC, Jam Equities of SE 14th, LLC, Jam Equities of Altoona, LLC and Asif Poonja, jointly and severally, for damages, plus pre-judgment interest, attorneys' fees and costs, for a declaratory judgment against Jam Equities of Ankeny, LLC, as requested above, plus attorneys' fees and costs, and for such other and further relief as the Court deems proper.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Aaron S. Blynn*

Michael D. Joblove, Esq., FBN 354147
mjoblove@venable.com
Aaron S. Blynn, Esq., FBN 73464
asblynn@venable.com
VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Popeyes Louisiana Kitchen, Inc.*